# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTHONY DONATO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     No. 16–cv–0632 (KBJ) |
| | ) |
| EXECUTIVE OFFICE FOR UNITED | ) |
| STATES ATTORNEYS, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

Pro se plaintiff Anthony Donato is an inmate who is incarcerated at the Federal
Correctional Institution in Danbury, Connecticut.  Between 2011 and 2014, Donato
submitted a series of document requests to various components of the Department of
Justice under the Freedom of Information Act, 5 U.S.C. § 552 ("the FOIA"), seeking
records related to an alleged plot by an inmate housed at the Metropolitan Correction
Center in New York ("MCC New York") to frame another inmate and a staff member of
the Bureau of Prisons ("BOP") for conspiracy to commit murder.  (*See* Compl., ECF
No. 1, ¶¶ 10, 25, 29, 35.)  Donato's document-request letters were addressed to the
Executive Office for United States Attorneys ("EOUSA"), the Federal Bureau of
Investigation ("FBI"), and BOP (collectively, "Defendants"), and by separate
correspondence addressed only to BOP, Donato also sought records related to BOP's
consideration of various statutory factors "when making designation placement
determinations for all [Donato's] prison transfers." (*See id.* ¶¶ 10, 25, 29, 35, 40).
Donato has filed the instant four-count complaint to challenge (1) EOUSA's denial of

his request for a fee waiver (Claim 1), (2) the FBI's refusal to confirm or deny the existence of any records regarding the alleged murder-conspiracy plot (Claim 2), and (3) the adequacy of BOP's search for records in response to Donato's requests, and also that agency's invocation of certain FOIA exemptions to withhold records about the alleged murder-conspiracy plot (Claims 3 and 4). (*See* Compl. at 10–16.)[1]

Before this Court at present is Defendants' collective motion for summary judgment. (*See* Defs.' Mot. for Summ. J. ("Defs.' Mot."), ECF No. 18.) The motion argues that each of the defendant agencies, including BOP, conducted an adequate search for records and properly invoked any applicable FOIA exemptions. (*Id.* at 8–13.) Defendants further maintain that EOUSA properly denied Donato's request for a public interest fee waiver because he failed to demonstrate the requisite ability to disseminate information to the public (*see* Defs.' Reply in Support of Mot. for Summ. J., ECF No. 25, at 3–4), and the FBI properly refused to confirm or deny the existence of records responsive to Donato's murder-conspiracy plot request (*see* Def.'s Mot. at 13–25). Donato disputes these contentions. (*See* Opp'n to Defs.' Mot. for Summ. J., ECF No. 23; Opp'n to Defs.' Reply in Support of Mot. for Summ. J., ECF No. 27.)

On March 31, 2018, this Court issued an order **GRANTING IN PART** and **DENYING IN PART** Defendants' motion for summary judgment. The instant Memorandum Opinion explains the reasons for that order. In short, with respect to Donato's claim against EOUSA, this Court finds that EOUSA properly denied Donato's request for a fee waiver, but that EOUSA is nonetheless obliged to produce 100 pages

---

[1] Page number cited herein refer to those that the Court's electronic case filing system automatically assigns.

of responsive records to Donato at no charge, and summary judgment cannot be entered in that agency's favor because it is not clear from the instant record that EOUSA has done so. The Court further finds that the FBI properly declined to confirm or deny the existence of records pertaining to the alleged murder-conspiracy plot, and is thus entitled to summary judgment, but BOP's declarations do not provide sufficient details regarding the searches that that agency conducted, or its invocation of FOIA exemptions, to warrant summary judgment at this time.

## I.     BACKGROUND

### A.     The Alleged MCC Murder-Conspiracy Plot

"Dominick Cicale is a former captain in the Bonanno organized crime family[,]" who began cooperating with the government in 2006 with respect to its investigation and prosecution of members of the Bonanno and other organized crime families. *United States v. Cicale*, No. 05-CR-60-2, 2018 WL 388941, at *1 (E.D.N.Y. Jan. 11, 2018). Cicale was incarcerated at MCC New York, and was a participant in BOP's Witness Security program ("WitSec"), during the cooperation period. While at MCC New York, Cicale purportedly ordered "other WitSec inmates to create mischief in the unit" by, for instance, spilling coffee on the floor prior to an inspection. *United States v. Basciano*, No. 03cr929, 2008 WL 794945, at *2 (E.D.N.Y. Mar. 24, 2008). In addition, and significantly for present purposes, in June of 2007, Cicale allegedly attempted to frame Vincent Basciano (another member of the Bonanno crime family) and a BOP Correctional Officer (Marco Santomaggio) by asking another inmate at MCC New York (Carlos Medina) to tell government attorneys that Santomaggio had hired him to kill Cicale on behalf of Basciano. (*See* Aff. of Mary Wade-Jones ("Wade-Jones Aff."), Ex.

2 to Pl.'s Opp'n, ECF No. 23-1 at 4–7, ¶¶ 5–6; *see also* Ex. 11 to Pl.'s Opp'n, ECF No. 23-1, at 36.)

Instead of carrying out Cicale's nefarious request, Medina allegedly reported the plot to BOP Correctional Counselor Gloria Black, who prepared a memorandum regarding Cicale's alleged murder-conspiracy scheme. (*See* Wade-Jones Aff. ¶ 6.) Approximately two months later, Black provided a copy of the memorandum to a BOP Special Investigative Supervisor (*see id.* ¶¶ 2, 6–7), who then purportedly referred the matter only to BOP's internal affairs office, and did not "refer the allegations regarding a possible murder plot to any other law enforcement agency such as the FBI[.]" (*Id.* ¶ 13.)

### B. Donato's FOIA Requests And Defendants' Pre-Litigation Responses

As mentioned, at issue in this opinion are FOIA requests that Donato made regarding two types of records: records concerning the murder-conspiracy scheme that Cicale allegedly orchestrated inside MCC New York, and separately, records documenting the factors that BOP took into account when it transferred Donato to various prisons within the federal system. Although Donato is a member of the same organized crime family as Cicale, *see Donato v. United States*, No. 09cv5617, 2012 WL 4328368, at *1 (E.D.N.Y. Sept. 20, 2012), he does not allege anywhere in the instant complaint or other filings that he was *involved* in any way in Cicale's alleged murder-conspiracy plot or BOP's investigation of it; rather, it appears that Donato was engaged in the process of gathering information about the purported plot for other reasons.[2]

---

[2] Donato's interest in the subject appears to relate to his own conviction for murder in aid of racketeering, which resulted from the same organized-crime prosecution that had landed Vincent Basciano in prison. *See United States v. Basciano*, 599 F.3d 184, 194–95 (2d Cir. 2010) (noting that superseding indictment named Basciano and Donato, among others, as co-defendants). The instant

Donato sought these categories of records from different components of DOJ, as follows.

                  1.      <u>Donato's Requests For Information Regarding The Murder-Conspiracy Plot</u>

Between 2011 and 2014, Donato submitted five substantively identical FOIA requests to agencies within DOJ: one to EOUSA, three to the FBI, and one to BOP. Each request sought records relating to Cicale's alleged scheme to frame Basciano and BOP Officer Santomaggio for conspiracy to commit murder. Specifically, Donato sought

> all documents, e-mails, inter-office memos, including the Carlos Medina 7-page letter to BOP Counselor Gloria Black from the U.S. Attorney's Offices in the Southern District of NY and the Eastern District of NY pertaining to the Dominick Cicale plot to frame Vincent Basciano and BOP officer Santomaggio with the help of Carlos Medina in a phony murder conspiracy in the WitSec Unit at MCC Manhattan on or about June, 2007.

(Ex. 1 to Compl., ECF No. 1-1 at 5 ("EOUSA Murder-Conspiracy Plot Request"); *see also* Ex. 10 to Compl., ECF No. 1-1 at 20 ("First FBI Request"); Ex. 12 to Compl., ECF No. 1-1 at 22–24 ("Suppl. FBI Requests"); Ex. Ex. 18 to Compl., ECF No. 1-1 at 37 ("BOP Murder-Conspiracy Plot Request").)[3] Each agency's response to Donato's FOIA request (or requests) is detailed below.

---

records requests seem to be part of Donato's effort to get his conviction overturned by unearthing damaging information about the 'snitch' who had given him up to the government (Cicale), as evidenced by various other court filings and proceedings. That is, during the same time that Donato was using the FOIA to gather records about Cicale's alleged murder-conspiracy scheme, he was also litigating a habeas petition that alleged, among other things, that his guilty plea "was obtained involuntarily" because "the government failed to disclose" records about Cicale's plot in the context of the plea negotiations—records that Donato claimed he could have used such to impeach Cicale's credibility if he had gone to trial. *Donato*, 2012 WL 4328368, at *1.

[3] Donato presumably requested records from BOP because BOP officials investigated Cicale's alleged plot and had generated at least one memorandum on the subject, as mentioned above. Furthermore, it was reasonable to assume that EOUSA had documents regarding the events at issue, because after his

Donato submitted his request for records pertaining to the murder-conspiracy

plot to EOUSA on May 31, 2011.  (*See* Compl. ¶ 10).  In subsequent correspondence,

Donato clarified that he was seeking records from the United States Attorney's Offices

in both the Southern District and the Eastern District of New York (*see id.* ¶¶ 11–12),

and thus, EOUSA separated his request into Request No. 11-2389 for the Southern

District inquiry, and No. 11-2390 for the Eastern District request (*see id.* ¶ 13).

EOUSA found no responsive documents in the Southern District of New York (*id.*

¶ 14), but advised Donato that it had located 55 "unindexed boxes of documents from

this multi-defendant case [i.e., the *Basciano* case] that are potentially responsive" to his

request in the Eastern District of New York, each of which might contain 2,000 to 4,000

pages of records.  (*Id.*, Ex. 2.)  EOUSA further informed Donato that completing its

search for responsive records would take an additional 55 hours beyond the two free

hours that the FOIA allots to each FOIA requester, and would therefore cost $1,540.

(*Id.* ¶ 15.)  Donato requested a waiver of those fees, but EOUSA denied this request.

(*See id.* ¶¶ 16–17.)

Donato then administratively appealed this denial to DOJ's Office of Information

Policy ("OIP"), which concluded that EOUSA's denial of the fee waiver request was

proper.  (*See id.* ¶¶ 19, 21.)  OIP remanded the matter to EOUSA with instructions for

EOUSA to provide Donato with his "statutory entitlement of 2 hours of search time and

---

racketeering conviction, Basciano had unsuccessfully moved for a new trial on the grounds that the
U.S. Attorney's Office had withheld material information about Cicale's prison plot that Basciano
could have used to attack Cicale's credibility during trial.  *See United States v. Basciano*, No. 03-CR-
929, 2010 WL 3325409, at *2 (E.D.N.Y. Aug. 19, 2010).

up to 100 pages of duplication without cost[.]"  (*Id.* ¶ 21.)  At the time Donato filed his

complaint, he had not received any documents in response to the EOUSA Murder-

Conspiracy Plot Request.  (*See id.* ¶ 24.)

b.  *Request Nos. 1175243-000 and 1286073-000*
*(The FBI Murder-Conspiracy Plot Requests)*

Donato submitted his first FOIA request to the FBI ("the First FBI Request") on

May 25, 2011, and the FBI assigned it Request No. 11752443-000.  (*See id.* ¶¶ 25–27.)

As of the filing of the complaint in the instant case, Donato had not received any

response to this request.  (*See id.* ¶ 28.)  Thereafter, on July 23, 2014, Donato submitted

additional, substantively identical FOIA requests to two different FBI field offices ("the

Supplemental FBI Requests"):  one to the FBI Field Office in Albany, New York, and

one to an FBI office in Manhattan.  (*See id.* ¶ 29.)  The FBI assigned Request No.

1286073-000 to both of the Supplemental FBI Requests, and it informed Donato that,

because his requests pertained to third parties (Gloria Black, Carlos Medina, Dominick

Cicale, Vincent Basciano, and Marco Santomaggio), it would not process the request

until Donato had submitted either "(1) an authorization and consent from [each]

individual; (2) proof of death; or (3) a justification that the public interest in disclosure

outweighs personal privacy[.]"  (Compl. ¶ 30.)  The FBI further informed Donato that,

in the absence of any of these items, it could neither confirm nor deny the existence of

responsive records.  (*See id*.)

In response, Donato asserted that the privacy interests of those third parties

"were nullified because the names of those involved in the Cicale plot are public

knowledge[,]" given that Cicale and Media had testified in open court and the relevant

events had been reported in newspapers and in published court opinions.  (Compl. ¶ 31.)

Donato also insisted that "[t]he public has an interest to know which of the government's informants perjured himself at trial . . . , and why the government allowed this to take place without any ramifications to either informant." (Ex. 14 to Compl., ECF No. 1-1, at 28.) Donato further maintained that there is a public interest in knowing "how the FBI and DOJ carried out their respective statutory duties to investigate and prosecute criminal conduct, i.e.[,] murder conspiracy and perjury." (*Id.*)

The FBI stood firm, refusing to confirm or deny whether it had any responsive records, on the grounds that Donato had "'not sufficiently demonstrated that the public's interest in disclosure outweighs [the] personal privacy interests of the subject.'" (Compl. ¶ 32 (quoting Ex. 15 to Compl., ECF No. 1-1, at 29).) During the subsequent administrative appeal, OIP upheld the FBI's decision. (*Id.* ¶ 34.)

c.  *Request No. 2011-08565 (BOP Murder-Conspiracy Plot Request)*

On May 31, 2011, Donato submitted a document request to BOP, seeking records related to the alleged murder-conspiracy plot, and BOP designated Donato's letter as Request No. 2011-08565. (*See id.* ¶¶ 35–36.) BOP located 225 pages of responsive records, and on September 28, 2011, it advised Donato that it was withholding all of the records in their entirety under Exemptions 2, 5, 6, 7(C), 7(D), 7(E), and 7(F). (*See id.* ¶ 36.) OIP affirmed BOP's withholding determination on appeal. (*See id.* ¶ 39.)

2.  Donato's Request For Information Regarding BOP's Placement Decisions

On March 2, 2014, Donato submitted a FOIA request to BOP seeking the worksheets that "detail the BOP's assessment of the 5 factors of 28 U.S.C. § 3621(b) that the BOP must consider when making designation placement determinations for all his prison transfers" ("BOP Placement Request"). (*Id.* ¶ 40 (citation omitted); *see also*

*id.* ¶ 42 (requesting the prison placement "Worksheets" that he says "8 court cases in different federal courts" have referenced).)  BOP searched for records responsive to this request, but did not locate any. (*See id.* ¶¶ 43–44.)

Donato appealed BOP's determination that no responsive records exist, and OIP affirmed the decision in part and remanded it in part.  (*See id.* ¶¶ 45, 47.)  On remand, BOP conducted an additional search and produced two pages of records; there is no dispute that neither document is the type of worksheet that Donato requested.  (*See id.* ¶ 48.)  Donato again appealed, and this time, OIP affirmed BOP's determination.  (*See id.* ¶¶ 49, 51.)

## C.    Procedural History

This Court granted Donato's motion for leave to proceed *in forma pauperis* on March 30, 2016, and docketed the instant complaint on April 4, 2016.  Donato's four-count pleading challenges EOUSA's denial of his fee waiver and its consequent failure to produce any records in response to Donato's murder-conspiracy plot document request (Claim 1); the FBI's refusal to confirm or deny the existence of any records regarding Donato's murder-conspiracy plot document request (Claim 2); and BOP's search for, and withholding of, documents in response to Donato's two different requests to that agency (Claims 3 and 4). (*See generally* Compl.) [4]

---

[4] Although Donato's complaint does not expressly challenge the adequacy of BOP's search for records responsive to his request for information about Cicale's alleged scheme, he makes such a challenge in his opposition (*see* Pl.'s Opp'n at 20–21), and because he is proceeding pro se, this Court will consider the merits of that claim.  *Cf. Crawford v. Duke*, 867 F.3d 103, 108 (D.C. Cir. 2017).  Similarly, the Court will consider the complaint's representation that "EOUSA has failed to respond" to Donato's request for two hours of search time and 100 pages (Compl. ¶ 24), and will evaluate that allegation separate and apart from the complaint's challenge to that agency's fee-waiver determination, even though Donato has omitted the two-free-search-hours allegation from the count that assigns error to EOUSA's fee-waiver decision (*see id.* ¶¶ 57–65).

Defendants answered Donato's complaint on August 22, 2016 (*see* Answer, ECF No. 11), and filed the instant motion for summary judgment on March 3, 2017. In support of their motion, Defendants offer four declarations that detail how each agency processed and responded to Donato's FOIA requests. (*See* Defs.' Mot.; Decl. of David M. Hardy ("Hardy Decl."), ECF No. 18-2 (pertaining to FBI First and Supplemental Requests); Decl. of David Luczynski ("Luczynski Decl."), ECF No. 18-4 (pertaining to EOUSA Murder-Conspiracy Plot Request); Decl. of BOP Attorney John E. Wallace ("Wallace Decl."), ECF No. 18-6 (pertaining to BOP Murder-Conspiracy Plot Request); Decl. of Gov't Info. Specialist Sandra Raymond ("Raymond Decl."), ECF No. 18-8 (pertaining to BOP Placement Request).)[5] Donato filed his opposition and cross-motion for summary judgment on June 5, 2017, and the parties' motions are now ripe for this Court's review.

## II.     LEGAL STANDARDS

### A.     FOIA Searches And Exemptions

The FOIA "was enacted to facilitate public access to Government documents" in order to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (internal quotation marks and citation omitted). Thus, under the FOIA, an agency is required to

---

[5]  In the FBI's declaration, Hardy admits that the FBI mistakenly construed Donato's first request for records as one seeking records *about Donato himself*. (*See* Hardy Decl. ¶ 5 n.2.) And while the parties have engaged in a vigorous debate over whether or not the agency actually released any records to Donato in response to this first request so construed (*see, e.g.*, Def.'s Mot. at 11–12; Pl.'s Opp'n at 35–36), that dispute is of no moment, because Donato subsequently filed a second request that was substantially identical to the first letter requesting records regarding Cicale's alleged murder-conspiracy scheme, and the agency issued a *Glomar* letter in response. (*See* Compl. ¶¶ 29–30.) Donato's complaint expressly challenges the FBI's *Glomar* response as "inappropriate" (*id.* ¶ 67), and thus, that agency action is the only FBI-related claim that is properly before the Court.

conduct a reasonable search for records, *see Muckrock, LLC v. CIA*, No. 14cv997, 2018 WL 1129713, at *6 (D.D.C. Feb. 28, 2018), and it must produce all responsive documents to the requester, unless the agency is entitled to withhold the records pursuant to any of the nine exemptions that are specified in the FOIA and that allow agencies to withhold records from disclosure, *see* 5 U.S.C. § 552(b); *see also Judicial Watch, Inc. v. U.S. Dep't of the Treasury*, 796 F. Supp. 2d 13, 23 (D.D.C. 2011).

When a plaintiff challenges the adequacy of an agency's search for records responsive to a FOIA request, the court applies a reasonableness test, and it may grant summary judgment to the agency based on information provided in "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (internal quotation marks and citation omitted); *see also Campbell v. DOJ*, 164 F.3d 20, 27 (D.C. Cir. 1998) (highlighting the "reasonableness" standard). Such agency affidavits attesting to a reasonable search "are afforded a presumption of good faith[,]" and "can be rebutted only 'with evidence that the agency's search was not made in good faith.'" *Defs. of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004) (quoting *Trans. Union LLC v. FTC*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001)).

Likewise, "[a]n agency withholding responsive documents from a FOIA release bears the burden of proving the applicability of [the] claimed exemptions[,]" and such a showing is typically made in agency affidavits. *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir 2011). Entry of summary judgment regarding an agency's invocation of FOIA exemptions is appropriate when the agency's affidavit "describes

the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith[.]" *Id.* But a declaration that does "little more than parrot established legal standards" when explaining withholdings falls well short of meeting the government's obligations under the FOIA. *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 236 (D.D.C. 2013) (finding that an agency fails to meet its burden under the FOIA if the agency's "declarations and briefs [] are laden with generalized, categorical descriptions of the contents"); *see also Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1184 (D.C. Cir. 1996) (concluding that "affidavits [that] offer no functional description of the documents" and that "contain only sweeping and conclusory assertions that the agency withheld the documents because they contained material which could reasonably be expected to cause damage to national security" are inadequate).

## B. "Glomar" Responses Based On Privacy Interests

In addition to producing requested records or withholding requested records under an established FOIA exemption, an agency can also issue what has come to be known as a "Glomar response" when a requester seeks identifiable records from the agency. *See, e.g.*, *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007); *see also ACLU v. CIA*, 710 F.3d 422, 427 (D.C. Cir. 2013) (noting that the court reviews an agency's decision to provide a Glomar response de novo). "A Glomar response permits an agency to 'refuse to confirm the existence of records where to answer the FOIA inquiry would cause harm cognizable under a[] FOIA exemption.'" *Casey v. FBI*, No. 17cv009, 2018 WL 1461957, at * 2 (D.D.C. Mar. 23, 2018) (alteration in original) (quoting *Wolf*,

473 F.3d at 374).[6] "To the extent the circumstances justify a Glomar response, the agency need not conduct any search for responsive documents or perform any analysis to identify segregable portions of such documents." *Lindsey v. FBI*, 271 F. Supp. 3d 1, 4 (D.D.C. 2017) (alteration, internal quotation marks, and citation omitted). A plaintiff "can overcome a Glomar response by showing that the agency has already disclosed the fact of the existence (or nonexistence) of responsive records, since that is the purportedly exempt information that a Glomar response is designed to protect." *ACLU*, 710 F.3d at 427.

It is the FBI's standard policy to issue a Glomar response whenever a FOIA request seeks records pertaining to a third party, unless the requester submits a privacy waiver or proof of death, or demonstrates an overriding public interest in disclosure, on the grounds that confirming that the agency has records tends to associate third parties with criminal activity, thus constituting an unwarranted invasion of their privacy. (*See* Hardy Decl. ¶ 22.) *See also Mount v. Neilson*, No. 16cv2532, 2018 WL 707485, at *2 (D.D.C. Feb. 5, 2018) (finding that an agency appropriately issued a Glomar response to a request for records regarding a law enforcement officer allegedly losing his official credentials to a prostitute because acknowledging the existence of responsive records "would constitute an unwarranted invasion of [the officer's] personal privacy"); *Smith v. FBI*, 663 F. Supp. 2d 1, 4–5 (D.D.C. 2009) (holding that the FBI's Glomar response was proper where confirming the existence of disciplinary records would impinge on an

---

[6] "Glomar" responses are "named for the Hughes Glomar Explorer, a ship used in a classified Central Intelligence Agency project 'to raise a sunken Soviet submarine from the floor of the Pacific Ocean to recover the missiles, codes, and communications equipment onboard for analysis by United States military and intelligence experts.'" *Roth v. DOJ*, 642 F.3d 1161, 1171 (D.C. Cir. 2011) (quoting *Phillippi v. CIA*, 655 F.2d 1325, 1327 (D.C. Cir. 1981)).

agent's interest in protecting the privacy of his employment records). The FBI's practice in this regard relies upon FOIA Exemption 7(C), which exempts from mandatory disclosure law enforcement records that, if released, "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C), and also FOIA Exemption 6, which applies to "personnel and medical files and similar files[,] the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[,]" *id.* § 552(b)(6).

## C.    FOIA Fee Waivers

If an agency locates responsive records and intends to produce them, the FOIA permits the agency to bill a FOIA requester for the direct costs of that production under specified circumstances. If the requester has sought the records "for commercial use[,]" the agency can bill for the cost of "document search, duplication, and review," *id.* § 552(a)(4)(A)(ii)(I); *see also Yanofsky v. U.S. Dep't of Commerce*, No. 16cv951, 2018 WL 1583305, at *4 (D.D.C. Mar. 30, 2018); *Liberman v. U.S. Dep't of Transp.*, 227 F. Supp. 3d 1, 8 (D.D.C. 2016). However, if the request "is not primarily in the commercial interest of the requester[,]" and the disclosure "is likely to contribute significantly to public understanding of the operations or activities of the government[,]" the agency must furnish documents to a requester at either a reduced charge or no charge at all. 5 U.S.C. § 552(a)(4)(A)(iii).

In FOIA lawsuits that claim improper denial of a fee-waiver request, the court reviews the agency's determinations de novo and must limit its review to the record before the agency. *See id.* § 552(a)(4)(A)(vii); *see also Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1311 (D.C. Cir. 2003). It is the requester's burden to show that she is entitled to a fee waiver. *See Citizens for Responsibility & Ethics in Washington v. DOJ*,

602 F. Supp. 2d 121, 125 (D.D.C. 2009).  Moreover, courts owe no deference to agency regulations interpreting the FOIA, *see Cause of Action*, 799 F.3d at 1115, but such regulations may be consulted if they are helpful and not inconsistent with the statutory text, *see, e.g.*, *id.* at 1124; *Nat'l Sec. Archive v. U.S. Dep't of Def.*, 880 F.2d 1381, 1387–88 (D.C. Cir. 1989).

DOJ's regulations provide specific instructions about the proper considerations when evaluating a request for a public interest fee waiver, including whether or not the disclosure furthers "the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester[,]" and also the "requester's expertise in the subject area as well as the requester's ability and intention to effectively convey information to the public[.]"  28 C.F.R. § 16.10(k)(2)(ii)(B).

### D.     Summary Judgment In FOIA Cases

As a procedural matter, "FOIA cases typically and appropriately are decided on motions for summary judgment."  *Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 136 (D.D.C. 2014) (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)).  Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment if the pleadings, disclosure materials on file, and affidavits "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Judicial Watch*, 25 F. Supp. 3d at 136 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).  The district court conducts a de novo review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under the FOIA.  *See* 5 U.S.C. § 552(a)(4)(B); *see also In Def. of Animals v.*

*Nat'l Insts. of Health*, 543 F. Supp. 2d 83, 92–93 (D.D.C. 2008). And because courts must analyze all underlying facts and inferences in the light most favorable to the FOIA requester, *see Willis v. DOJ*, 581 F. Supp. 2d 57, 65 (D.D.C. 2008), it is appropriate to enter summary judgment for an agency only if the agency proves that it has "fully discharged its [FOIA] obligations[,]" *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996).

## III. ANALYSIS

The DOJ agencies that received Donato's various FOIA requests have responded to them in different ways; thus, this Court has had to address a variety of issues in order to resolve Defendants' motion for summary judgment. As explained fully below, the Court has found that the FBI's response to Donato's FOIA request was appropriate under the circumstances presented here, and as a result, the FBI is entitled to summary judgment at this time. But Defendants' motion for summary judgment must be denied without prejudice as to EOUSA, because Defendants have not established that EOUSA performed the search and review function for at least two hours in response to Donato's FOIA request, or that it provided Donato with at least 100 pages of non-exempt records at no charge, despite EOUSA's proper denial of Donato's fee waiver request. Nor can BOP claim entitlement to summary judgment now, because the declarations that Defendants have submitted are manifestly insufficient to establish either that BOP's searches were adequate or that its withholdings are well-founded. Accordingly, Defendants' motion for summary judgment has been granted in part and denied in part, and the Order that accompanies this Memorandum Opinion provides a deadline for the parties' submission of a proposed schedule for further proceedings.

**A.    The FBI Is Entitled To Summary Judgment, Because Its Glomar Response To Donato's Records Request Did Not Violate The FOIA**

As explained above, in response to Donato's request for records regarding the murder-conspiracy plot that Dominic Cicale allegedly devised, the FBI issued a "Glomar" response, refusing to confirm or deny the existence of responsive records on the grounds that even acknowledging the existence of records would impinge on the privacy interests of third parties named in the records, thus implicating FOIA Exemptions 6 and 7(C).  (*See* Hardy Decl. ¶ 22.)  Because there is no dispute here that the requested records are law enforcement records (*see id.* ¶ 20), this Court need only evaluate whether disclosure of the records "could reasonably be expected to constitute an unwarranted invasion of personal privacy" under FOIA Exemption 7(C).  *See* 5 U.S.C. § 552(b)(7)(C); *see also Wolf*, 473 F.3d at 374 (noting that the relevant Glomar question is whether confirming or denying the existence of responsive records "'would cause harm cognizable under a[] FOIA exception'" (quoting *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982))); *cf. Roth*, 642 F.3d at 1173 (noting that because Exemption 7(C) is broader than Exemption 6, there is no need to consider Exemption 6 if the records at issue are law enforcement records).

For the purpose of Exemption 7(C), a reviewing court must "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Davis v. DOJ*, 968 F.2d 1276, 1281 (D.C. Cir. 1992).  It is well-established that invocation of this exemption is permissible where "the privacy interest at stake outweighs the public's interest in disclosure[,]" *Nation Magazine*, 71 F.3d at 893 (citation omitted), and it is also clear that the mere "mention of an individual's name in a law enforcement file will engender comment and speculation and

carries a stigmatizing connotation[,]" *Schrecker v. DOJ*, 349 F.3d 657, 666 (D.C. Cir. 2003) (internal quotation marks and citation omitted).  Thus, a broad range of people, including "witnesses, informants, and investigating agents have a substantial interest in ensuring that their relationship to the investigations remains secret[,]" *Roth*, 642 F.3d at 1174 (alteration, internal quotation marks, and citation omitted).  And this Court readily concludes that all of the third parties mentioned in Donato's FOIA request have sufficient privacy interests at stake.  *See Pugh v. FBI*, 793 F. Supp. 2d 226, 232–33 (D.D.C. 2011) (finding that two FBI confidential informants had significant privacy interests and affirming the agency's Glomar response to an inmate's request seeking records that would reveal the informants' identities).

Turning to the other side of the balancing test, the D.C. Circuit has recognized that in "instances where a third party asks if an agency has information regarding a named individual in its law enforcement files, the cognizable public interest in that information will be negligible [because] the requester will be seeking records about a private citizen, not agency conduct." *Nation Magazine*, 71 F.3d at 895.  Indeed, "the only relevant public interest in disclosure to be weighed . . . is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government." *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (alterations, internal quotation marks, and citation omitted).  Donato attempts to satisfy this requirement by asserting that "[t]he public has an interest to know which of the government's key informants perjured himself at trial and committed related crimes, i.e.[,] making false statements and obstruction of justice[.]"  (Pl.'s Opp'n at 16.)  But

this argument merely underscores the point, since Donato admits that the public's alleged interest in the misconduct of *inmates and informants*, who are private citizens, not government personnel.

Donato attempts to tie in alleged government misconduct by asserting that the public also has an interest in understanding "how the FBI, USAO, and the BOP carried out their respective duties to investigate and prosecute criminal conduct-murder conspiracy to frame a federal officer and informant[.]" (*Id.*) Donato thus suggests that BOP may have acted improperly in conducting its investigation, but the law is clear that where "the asserted public interest is the revealing of government misconduct . . . the FOIA requester [must] 'establish more than a bare suspicion' of misconduct." *Roth*, 642 F.3d at 1178 (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004)). Indeed, to support the contention that there is a public interest that trumps the third parties' privacy interests in such circumstances, "the requester must produce *evidence* that would warrant a belief by a reasonable person that the alleged [g]overnment impropriety might have occurred." *Favish*, 541 U.S. at 174 (emphasis added). Donato does not proffer any evidence; in fact, he even fails to provide any basis for his bald suggestion that the FBI, USAO, and BOP might have acted improperly. Therefore, his contention falls well short of the applicable standard.

Donato also attempts to invoke the public domain doctrine (*see* Pl.'s Opp'n at 41–45), pursuant to which information otherwise exempt from disclosure "lose[s its] protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno,* 193 F.3d 550, 554 (D.C. Cir. 1999). But this argument also misses the mark. "[I]n the context of a *Glomar* response, the public domain exception is triggered when

'the prior disclosure establishes the *existence* (or not) of records responsive to the FOIA request,' regardless [of] whether the contents of the records have [previously] been disclosed[.]" *Marino v. DEA*, 685 F.3d 1076, 1081 (D.C. Cir. 2012) (emphasis in original) (quoting *Wolf v. CIA*, 473 F.3d 370, 379 (D.C. Cir. 2007). Moreover, the requester bears the burden of establishing that there was an official, prior disclosure regarding the precise matter at issue, *see Wolf*, 473 F.3d at 378 (citation omitted)—i.e., a prior disclosure *that the requested records exist*. Thus, the relevant question is whether Donato can show that the FBI has previously acknowledged its involvement in investigating the alleged murder-conspiracy plot such that the records that Donato seeks regarding that investigation are likely to exist in the FBI's files. *See Leopold v. DOJ*, No. 16cv1827, 2018 WL 1384124, at *10 (D.D.C. Mar. 19, 2018); *see also James Madison Project v. OJ*, No. 17cv00144, 2018 WL 294530, at *12–13 (D.D.C. Jan. 4, 2018) (holding that the FBI's Glomar response was proper where confirming or denying the existence of responsive records would require the FBI to confirm or deny whether it was currently investigating or had previously investigated particular matters, which would cause harms that fall within the scope of Exemption 7(A)).

Donato has come nowhere close to satisfying this exacting burden. His argument about the public nature of the requested information focuses entirely on what others have said about the murder-conspiracy plot—e.g., Cicale's and Medina's testimony in open court about the alleged plot (*see* Pl.'s Opp'n at 41), media coverage of the alleged plot and associated trial proceedings (*see id.* at 41–42), and the discussion of the plot in court filings (*see id.* at 42–43)—and Donato does not reference any statements from the FBI. To be sure, Donato points to documents that indicate that BOP or the

"Government" generally investigated the alleged murder-conspiracy plot. (*See id.* at 45; Wade-Jones Aff. ¶5.) But to prevail under the public domain doctrine, Donato must show that *the FBI* has acknowledged that *it* investigated Cicale's alleged scheme, and thus would be likely to have records about that plot, and Donato has done nothing to demonstrate any such acknowledgement by the FBI. *See Leopold*, 2018 WL 1384124, at *10 (finding that the FBI properly issued a Glomar response to a request seeking records regarding a widely-reported statement made by a then-presidential candidate where the FBI had not publicly acknowledged any investigation of the statement). What is more, it is by now well established that, under Exemption 7(C), "a Glomar response may be issued in place of a statement acknowledging the existence of responsive records but withholding them, if confirming or denying the existence of the records would associate the individual named in the request with criminal activity." *Nation Magazine*, 71 F.3d at 893.

So it is here. Donato has sought records about an investigation that the FBI has not previously acknowledged concerning private individuals whose interests could be harmed if the FBI confirms that it possesses records pertaining to any such investigation. Thus, this Court concludes that the FBI properly refused to confirm or deny the existence of records responsive to Donato's FOIA request.

**B.     EOUSA Properly Denied Donato's Request For A Fee Waiver, But It Nonetheless Has To Provide Donato With 100 Pages Of Records**

Donato challenges two different aspects of EOUSA's response to his FOIA request. He maintains that he was entitled to a public interest fee waiver for the requested records, that EOUSA improperly denied him (*see* Compl. ¶¶ 57–65), and, regardless, he suggests that EOUSA failed to fulfill its statutory obligation to search for

2 hours and provide him with up to 100 pages of records for free (*see id.* ¶¶ 21–24).

This Court rejects Donato's claim that EOUSA responded improperly regarding the fee

waiver request, but the record herein is muddled as to whether or not EOUSA satisfied

its obligation to provide Donato with 100 pages of records, and until the agency

provides the necessary clarification, an award of summary judgment must be withheld.

     1.    Donato Has Not Demonstrated That He Is Able To Disseminate The Requested Records To The Public

In order to be entitled to a public interest fee waiver for records requested under

the FOIA, the requester must establish, first, that he does "not have a commercial

interest in the disclosure of the information sought[,]" *Larson v. CIA*, 843 F.2d 1481,

1483 (D.C. Cir. 1988) (citation omitted), and second, "that the disclosure of the

information [is] likely to contribute significantly to public understanding of the

operations or activities of the government[,]" *id.* (internal quotation marks and citation

omitted).  For the purpose of assessing whether or not a disclosure of information will

contribute to the public understanding, one consideration is whether the requester has

the "'ability and intention to effectively convey' or disseminate the requested

information to the public." *Judicial Watch, Inc. v. DOJ*, 185 F. Supp. 2d 54, 62

(D.D.C. 2002); *see also* 28 C.F.R. § 16.10(k)(2)(ii)(B) (requiring DOJ to consider,

when evaluating a request for a public interest fee waiver, whether the disclosure will

"contribute to the understanding of a reasonably broad audience of persons interested in

the subject, as opposed to the individual understanding of the requester").

Notably, to carry this burden, a FOIA requester must "describe[] in reasonably

specific and non-conclusory terms his ability to disseminate the requested information."

*Perkins v. U.S. Dep't of Veterans Affairs*, 754 F. Supp. 2d 1, 8 (D.D.C. 2010).

Furthermore, it is clear beyond cavil that "[m]erely stating one's intention to disseminate information does not satisfy this factor; instead, there must be some showing of one's ability to actually disseminate the information." *Id.*; *see also Rossotti*, 326 F.3d at 1314 (holding that a requester had provided sufficient information regarding the nine ways it communicated information obtained via FOIA requests, including its press releases, newsletter with monthly circulation of over 300,000, website, email list serve, congressional testimony, nationally syndicated television show, weekly radio program, and conferences); *Cmty. Legal Servs., Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 405 F. Supp. 2d 553, 558 (E.D. Pa. 2005) (finding that the requester had established its ability to disseminate information where it is "a respected source of information in its field" with "multiple mechanisms for disseminating the requested information in addition to its legal practice," such as leaflets, brochures, communications with the media and public officials, yearly training provided to judges, attorneys, and social workers, and also its own website).

Here, the parties do not dispute that Donato has no commercial interest in the disclosure of the records that he seeks, and thus satisfies the first prong of the public interest fee waiver test. (*See* Pl.'s Opp'n at 26; Defs.' Reply at 3–4.) But the parties disagree about Donato's ability to disseminate information to a sufficiently broad audience, and this Court concludes that Donato falls well short. "[T]his is not a case where [Donato] operates his own means of information dissemination such as a newsletter or a website[,]" *Perkins*, 754 F. Supp. 2d at 9; therefore he is entirely dependent on external entities to distribute material to the public. Donato points to letters he sent to newspaper reporters with USA Today and the New York Post, who he

believes would have an interest in publishing records regarding the alleged murder plot. (*See* Fee Waiver Appeal, Ex. 6 to Compl., ECF No. 1-1, at 12.) However, Donato provides no evidence that either newspaper has responded to his correspondence, let alone expressed any interest in actually publishing any records Donato may forward. *See Perkins*, 754 F. Supp. 2d at 9. Thus, Donato cannot rely upon these letters as sufficient to demonstrate that he can disseminate the requested records.

Donato's additional contention that he will commit to "posting all pertinent information I receive" on the website of a group called "Access Legal Aide," which he describes as a company that "publishes inmate information and letters on Facebook, Google, and [its] Blog" (Fee Waiver Appeal at 12), fares no better. "In assessing whether a public interest fee waiver request should be granted, the Court . . . must look to the scope of the requester's proposed dissemination—whether to a large segment of the public or a limited subset of persons." *Prison Legal News v. Lappin*, 436 F. Supp. 2d 17, 26–27 (D.D.C. 2006) (finding that a requester which published a journal with "3,400 reported subscribers and an estimated readership population of 18,000" had "demonstrated its ability to distribute the printed journal to the public"). And Donato has not provided any details about the *reach* of the Access Legal Aide website; indeed, the sole detail that Donato has offered is a link to Access Legal Aide's purported website (*see* Letters From Inside Email, Ex. C to Pl.'s Surreply, ECF No. 27, at 21), yet as far as this Court can tell, the listed webpage either does not exist or is not actually publicly available. Consequently, whatever this publication might be, it is plainly not a sufficient means for Donato to disseminate any of the requested records.

All things considered, then, this Court agrees with EOUSA's determination that Donato has not made the requisite showing that he is entitled to a public interest fee waiver under the FOIA. Therefore, the Court finds that EOUSA's denial of Donato's public interest fee waiver request was proper.

      2.    <u>EOUSA Is Required By Law To Provide 100 Pages Of Records To Donato Regarding The Alleged Murder-Conspiracy Plot</u>

Nevertheless, EOUSA must still proceed to address Donato's FOIA request, because Donato is unquestionably entitled to two hours of search time and up to 100 pages of duplication at no charge. *See* 28 C.F.R. § 16.11(d)(3)(ii). (*See also* Fee Waiver Appeal Denial, Ex. J to Luczynski Decl., ECF No. 18-5 at 28 (denying Donato's appeal of "the fee waiver determination made by [EOUSA] on your request for access to records concerning the Basciano case" and remanding matter to agency with instructions for it to provide Donato with his free hours of search time and one hundred pages of free duplication). EOUSA's declarant indicates that the agency fulfilled this obligation and provided Donato with the records he requested (*see* Luczynski Decl. ¶ 17); however, Donato maintains that he has received no such records (*see* Pl.'s Opp'n at 32–33).

Importantly, careful scrutiny of the response letter that EOUSA sent to Donato following the administrative remand (which Donato claims not to have received), reveals that the agency's letter states that the subject matter of the request was "Self—Anthony Donato[,]" rather than records pertaining to Cicale's alleged murder-conspiracy scheme. (Ex. N to Luczynski Decl., ECF 18-5 at 38.) This suggests that the agency's free search time may have been misdirected. And the Luczynski Declaration adds to the confusion about EOUSA's purported search, because it states both that

EOUSA searched for records regarding Donato himself *and* that it "searched for records from the case files related to the criminal prosecution case [that] the plaintiff identified." (Luczynski Decl. ¶ 18.) Given the uncertainty in the current record regarding whether or not EOUSA has properly responded to the records request that Donato actually submitted, by providing him with two hours of search time and up to 100 pages of records responsive to his request for documents related to Cicale's alleged murder-conspiracy plot, this Court has no other option but to conclude that summary judgment is inappropriate at this juncture.

**C.** **BOP's Declaration Does Not Establish That BOP Conducted An Adequate Search, Nor Does It Support The Agency's Invocation Of FOIA Exemptions**

This Court reaches the same conclusion with respect to the part of Defendants' summary judgment motion that pertains to BOP. Donato maintains that BOP conducted inadequate searches for records in response to his two FOIA requests to that agency, and that BOP also improperly invoked FOIA Exemptions 2, 5, 6, 7(C), 7(D), 7(E), and 7(F) to withhold certain documents related to the alleged murder-conspiracy plot. (*See* Compl. ¶¶ 35–52.) To be entitled to summary judgment with respect to the adequacy of its search, BOP must show that it made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (citation omitted); *see also Nation Magazine*, 71 F.3d at 890. And in this regard, BOP has submitted a declaration from John Wallace, a Senior Attorney with BOP, detailing the agency's response to Donato's request for records concerning the alleged murder conspiracy (*see* Wallace Decl.), and another declaration from Sandra Raymond, a Government Information Specialist in BOP's General Counsel's FOIA/Privacy Act

Section, explaining the agency's response to Donato's request for his placement records (*see* Raymond Decl.).

Neither of these declarations is sufficient to support an award of summary judgment in BOP's favor. To begin with, each declaration is utterly silent as to the scope or method of the search that BOP staff conducted, nor do the declarants reveal the search terms used. Moreover, there is also no indication of the agency's reasons for believing that responsive records would likely be found in the places where it searched. (*See* Wallace Decl. ¶ 5 (stating that the declaration "will provide the Court and Mr. Donato with an explanation of . . . the procedures used to review and process the responsive records," but not actually providing any such explanation); Raymond Decl. ¶ 6 (noting that staff at FCI Sandstone "detailed their search of Mr. Donato's Inmate Central File" in an email, without describing the contents of that email or attaching it to the declaration). Thus, the statements that BOP has submitted themselves provide no basis whatsoever for any determination that BOP's searches for records were reasonable. *See Weisberg v. DOJ*, 627 F.2d 365, 370 (D.C. Cir. 1980) (holding that an affidavit that stated that an agency official "ha[s] conducted a review of [agency] files which would contain [responsive] information" and did not provide further details was insufficient to support entry of summary judgment (internal quotations omitted)).

The withholding justifications that BOP lays out in its declarations are similarly deficient. Certain portions of the Wallace Declaration refer simply to "pages" that BOP has produced or withheld—pages that are identified solely by Bates number. (*See, e.g.*, Wallace Decl. ¶¶ 13, 24, 35.) The declaration provides little, if any, explanation about "what types of documents these pages belong to, who created the documents and for

what purpose, and how the exemptions relate to the nature of the documents themselves." *Sciacca v. FBI*, 23 F. Supp. 3d 17, 30 (D.D.C. 2014). The statement also lacks any discussion of "whether the 'pages' are part of stand-alone, single-page documents, or comprise parts of various multi-page documents that Defendants identified as responsive to [Donato's] document request." *Id.* This Court has held on at least four prior occasions that, without such information, it cannot "conduct a meaningful review of the [BOP'] invocation[s]" of FOIA exemptions in this matter. *Brick v. DOJ*, No. 15cv1246, 2017 WL 5198172, at *1 (D.D.C. Nov. 9, 2017); *see also Poitras v. Dep't of Homeland Sec.*, No. 15cv1091, slip op. at 3–6 (D.D.C. March 31, 2017); *Elec. Privacy Info. Ctr. v. DOJ*, No. 13cv1961, 2016 WL 447426, at *3–4 (D.D.C. Feb. 4, 2016); *Sciacca*, 23 F. Supp. 3d at 30–31. And the Court has no better insight into the records at issue in this case, given that the only statements that BOP has provided also lack this necessary information.

Given the clearly manifest deficiencies in the supporting statements that BOP has provided, Defendants have failed to establish that BOP is entitled to summary judgment. *See Nation Magazine*, 71 F.3d at 890 (holding that an agency's declaration in a FOIA case must "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched"); *see also Conservation Force v. Ashe*, 979 F. Supp. 2d 90, 98 (D.D.C. 2013) (noting that an agency must submit a "reasonably detailed affidavit" when seeking summary judgment regarding the reasonableness of its search for records (internal quotation marks and citation omitted)). Therefore, this Court must deny Defendants'

motion for summary judgment without prejudice to its filing updated declarations that are sufficient to explain the agency's search efforts and withholdings.

## IV.    CONCLUSION

The agencies' different responses to Donato's substantively similar FOIA requests have demanded different legal analyses that, not surprisingly, lead to different results.  Defendants have established that they are entitled to summary judgment on the claims that Donato asserts against the FBI, because that agency appropriately issued a Glomar response with respect to Donato's requests for materials pertaining to Cicale's alleged murder plot.  Defendants have also established that EOUSA properly denied Donato's fee waiver request, but Defendants have not shown that EOUSA spent at least two hours searching for records regarding the alleged murder-conspiracy plot, or that it produced 100 pages of records to Donato at no cost, nor have they demonstrated that BOP conducted a reasonable search for records, or made proper withholdings, regarding either FOIA request that Donato submitted to that agency.  Accordingly, as reflected in the prior Order, Defendants' motion for summary judgment has been **GRANTED IN PART and DENIED IN PART**.  An Order setting a deadline for Defendants to submit a proposed schedule for further proceedings will issue separately.


DATE:  April 16, 2018                                     *Ketanji Brown Jackson*
                                                          KETANJI BROWN JACKSON
                                                          United States District Judge