UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ANTHONY DONATO,** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 16-632 (FYP) |
| **EXECUTIVE OFFICE UNITED STATES ATTORNEYS,** *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION**

This is a Freedom of Information Act ("FOIA") case brought by *pro se* Plaintiff Anthony Donato against the Executive Office for United States Attorneys ("EOUSA"), the Federal Bureau of Investigation ("FBI"), and the Federal Bureau of Prisons ("BOP"), each of which denied his requests for records relating to an alleged conspiracy to commit murder. On March 31, 2018, the Court granted summary judgment in favor of the FBI with respect to its decision to neither confirm nor deny the existence of responsive records. *See Donato v. Exec. Off. for United States Att'ys*, 308 F. Supp. 3d 294, 314 (D.D.C. 2018). Donato now asks this Court to reconsider that decision, arguing that the Court "overlooked key evidence" and misinterpreted his arguments. *See* ECF No. 37 (Plaintiff's Motion for Reconsideration) at 1. For the reasons explained below, the Court denies Donato's Motion.

**BACKGROUND**

Donato is an inmate at the Federal Correctional Institution in Danbury, Connecticut. *See* ECF No. 1 (Complaint), ¶ 6. He has submitted a series of document requests to various components of the Department of Justice ("DOJ") under FOIA, *see* 5 U.S.C. § 552, seeking records related to an alleged plot hatched by an inmate housed at the Metropolitan Correction Center ("MCC") in New York. *See* Compl., ¶¶ 10, 25, 29, 35. The inmate, Dominick Cicale, allegedly attempted to frame a member of the Bonanno crime family and a BOP correctional officer for murder. *See* ECF No. 23 (Plaintiff's Opposition to Defendants' Motion for Summary Judgment) at 2–5; ECF No. 23-1 at 4–7 (Affidavit of Mary Wade-Jones). Donato is a member of the Bonanno crime family, and he believes that Cicale gave him up to the government. *See United States v. Basciano*, 599 F.3d 184, 194–95 (2d Cir. 2010) (noting that superseding indictment named Donato as co-defendant); *id.* at 209 (noting that Cicale provided testimony against Donato). Donato apparently seeks to uncover damaging information about Cicale, which might support Donato's attempt to overturn his own conviction for murder in aid of racketeering. *Donato v. United States*, 2012 WL 4328368, at *1 (E.D.N.Y. Sept. 20, 2012); *see also Donato*, 308 F. Supp. 3d at 301, n.2.

Between 2011 and 2014, Donato submitted five substantively identical FOIA requests to agencies within DOJ: one to the EOUSA, three to the FBI, and one to the BOP. *See* Compl., ¶¶ 10, 25, 29, 35. Each request sought records relating to Cicale's alleged scheme, but only the requests to the FBI are relevant for the present motion. Donato submitted his first FOIA request to the FBI on May 31, 2011, and then two subsequent requests on July 23, 2014. *See id.*, ¶¶ 25, 29. The FBI informed Donato that, because his requests pertained to third parties, it would not process the requests until Donato submitted "(1) an authorization and consent from [each]

2

individual; (2) proof of death; or (3) a justification that the public interest in disclosure outweighs personal privacy[.]" *See* Compl., ¶ 30.  The FBI further informed Donato that, in the absence of any of these items, it could neither confirm nor deny the existence of responsive records.  *See id.*

In a written response, Donato asserted that the privacy interests of any third parties "were nullified because the names of those involved in the Cicale plot are public knowledge," as the relevant events had been related in open court and reported in newspapers.  *See* Compl., ¶ 31; ECF No. 1-1, Ex. 16 (August 14, 2014 Donato Letter to FBI) at 28–29.  Donato also asserted that public interest in the functioning of the FBI and DOJ should outweigh the privacy interests of any third parties.  *See id.* at 29–30.  The FBI replied that Donato had "not sufficiently demonstrated that the public's interest in disclosure outweighs [the] personal privacy interests of the subject[s]," refusing again to confirm or deny whether it had any responsive records.  *See* Compl., ¶ 32.

Donato brought the instant case, in part, to challenge the FBI's response to his FOIA requests.  *See* Compl., ¶¶ 66–73.  In Donato's view, the documents he requested are in the public domain and cannot be withheld under any FOIA exemption.  *See id.*, ¶ 70.  In March 2017, the FBI moved for summary judgment, *see* ECF No. 18 (Defendants' Motion for Summary Judgment).  This Court granted the motion in April 2018, finding that Donato came "nowhere close to satisfying" his burden under the public domain doctrine.  *Donato*, 308 F. Supp. 3d at 310.[1]  Donato now asks this Court to reconsider that ruling.  *See* Pl. Mot. at 1.

---

[1]  This case was originally before Judge Ketanji Brown Jackson.  On June 17, 2021, Judge Jackson was elevated to the D.C. Circuit.  The case has since been transferred to the undersigned judge.

**LEGAL STANDARD**

Under Rule 54(b) of the Federal Rules of Civil Procedure, a district court may revise its own interlocutory orders "at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Rule 54(b) recognizes the inherent power of the courts to reconsider interlocutory orders "as justice requires." *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (quoting *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22–23 (1st Cir. 1985) (Breyer, J.)). Because reconsideration of an interlocutory order does not implicate the same finality and judicial resource concerns as the reconsideration of a final order, the Rule 54(b) standard is "more flexible" than Rule 59(e), which governs the reconsideration of final judgments. *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015). While Rule 59(e) motions ordinarily cannot be used to "raise arguments or present evidence that could have been raised before the entry of judgment," *GSS Group Ltd. v. Nat'l Port Authority*, 680 F.3d 805, 812 (D.C. Cir. 2012) (citation and internal quotation marks omitted), Rule 54(b) contains no such "strict prohibition," *Cobell*, 802 F.3d at 26; *see also Pinson v. DOJ*, 396 F. Supp. 3d 66, 76 (D.D.C. 2019) (noting that "a trial court has more discretion in applying Rule 54(b) than it does under Rule[ ] 59(e)").

Thus, the court may grant a Rule 54(b) motion for reconsideration so long as there are "good reasons for doing so." *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 308 F. Supp. 3d 186, 193 (D.D.C. 2018) (quoting *Cobell v. Norton*, 355 F. Supp. 2d 531, 540 (D.D.C. 2005)). Good reasons exist where the court "has made an error not of reasoning, but of apprehension," *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004) (citation omitted), *i.e.*, where the court failed to consider information that "might reasonably be expected to alter the conclusion reached by the court," *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101

4

(D.D.C. 2005) (internal quotation marks omitted), or where the movant presents new information that "constitute[s] a change in the court's awareness of the circumstances," even though it "may not constitute a change in the actual facts of the case," *Judicial Watch v. Dep't of Army*, 466 F. Supp. 2d 112, 124 (D.D.C. 2006). The "moving party has the burden to demonstrate that reconsideration is appropriate," *United States v. All Assets Held at Bank Julius, Baer & Co., Ltd.*, 315 F. Supp. 3d 90, 96 (D.D.C. 2018), and the court's discretion to grant a Rule 54(b) motion for reconsideration is "broad." *North v. DOJ*, 810 F. Supp. 2d 205, 207 (D.D.C. 2011).

## ANALYSIS

Donato offers the Court three bases to reconsider its prior decision to uphold the FBI's *Glomar* response based on FOIA Exemption 7(C): (1) that the Court overlooked evidence in the record that the FBI had publicly acknowledged Cicale's alleged scheme, thus rendering its *Glomar* response inappropriate; (2) that new unsealed evidence further demonstrates public acknowledgement; and (3) that the Court improperly weighed the public interest in the Cicale plot when assessing the applicability of Exemption 7(C). *See* Pl. Mot. at 3, 7, 9. The Court addresses Donato's first two arguments together before turning to the third.

### I. Public Acknowledgement of Cicale Plot

Donato maintains that the Court's decision upholding the FBI's *Glomar* response is substantively wrong because other agencies at DOJ publicly acknowledged the Cicale plot, thus defeating any *Glomar* protection. *See* Pl. Mot. at 6–7. To support his argument, Donato draws the Court's attention to two documents previously in the record, along with a set of documents unsealed several months after the Court issued its summary judgment Opinion. *See id.* at 3, 5, 7. The Court limits its consideration to the new evidence that Plaintiff has presented. *See Wesberry v. United States*, 304 F. Supp. 3d 30, 41 (D.D.C. 2018) ("[I]t is well-established that motions for

5

reconsideration [under Rule 54(b)] cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier.").[2]  The newly submitted documents were unsealed after the Court's initial ruling, in a matter litigated in the Eastern District of New York.  The documents include "six memoranda by BOP staff, an undated handwritten letter, and an undated, unsigned affidavit" all relating to the investigation of the Cicale plot.[3]  *See* ECF No. 37-1, Ex. F (Letter from Amy Busa to Judge Garaufis) at 1.

When an agency receives a FOIA request, in addition to producing requested records or withholding requested records under an established FOIA exemption, it can also issue what has come to be known as a "*Glomar* response."  *See, e.g.*, *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007); *Phillippi v. CIA*, 546 F.2d 1009, 1010 (D.C. Cir. 1976).  "A *Glomar* response permits an agency to 'refuse to confirm the existence of records where to answer the FOIA inquiry would cause harm cognizable under a[ ] FOIA exemption.'"  *Casey v. FBI*, 302 F. Supp. 3d 209, 212 (D.D.C. 2018) (alteration in original) (quoting *Wolf*, 473 F.3d at 374).  It is the FBI's standard policy to issue a *Glomar* response whenever a FOIA request seeks records pertaining to a third

---

[2]  Donato highlights two documents that were already in the record when the Court ruled on the Motion for Summary Judgment: (1) a September 26, 2007 letter from the U.S. Attorney's Office for the Eastern District of New York "lay[ing] out the background of the plot allegations," *see* Pl. Mot. at 7; and (2) an FBI interview write-up referencing Cicale's role in an unrelated murder, *see id.* at 5.  Because the Court previously considered this evidence, it declines to do so again.  In any event, Plaintiff's renewed arguments based on these documents are unpersuasive, as neither the letter nor the interview write-up establish that the FBI itself publicly acknowledged that it was investigating the alleged plot.  *See infra* at 7–8.

[3]  The eight documents are as follows: (1) a BOP memorandum from an MCC unit counselor describing a conversation with an inmate about "a hit;" (2) a BOP memorandum from an MCC special investigative supervisor describing a conversation with an inmate about a BOP officer; (3) a BOP memorandum from an MCC unit counselor describing a conversation with an inmate about the alleged Cicale plot; (4) a BOP memorandum from an MCC special investigative lieutenant describing a conversation with an inmate about a BOP officer; (5) a BOP memorandum from an MCC correctional officer describing rumors about a BOP officer; (6) a BOP memorandum from an MCC unit manager describing a conversation with an inmate concerning allegations against a BOP officer; (7) an unsigned affidavit from an MCC inmate describing the alleged Cicale plot; and (8) an unsigned handwritten letter describing the alleged Cicale plot.  *See generally* Exhibit F.

party, unless the requester submits a privacy waiver or proof of death, or demonstrates an overriding public interest in disclosure, on the grounds that confirming that the agency has records tends to associate third parties with criminal activity, thus constituting an unwarranted invasion of their privacy.  *See* ECF No. 18-2 (Declaration of David M. Hardy), ¶ 22.  This practice relies upon FOIA Exemption 7(C), which exempts from mandatory disclosure law enforcement records that, if released, "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  *See* 5 U.S.C. § 552(b)(7)(C).

As the Court acknowledged in its initial summary-judgment ruling, a plaintiff can overcome a *Glomar* response "by showing that the agency has already disclosed the fact of the existence (or nonexistence) of responsive records, since that is the purportedly exempt information that a *Glomar* response is designed to protect."  *ACLU v. CIA*, 710 F.3d 422, 427 (D.C. Cir. 2013).  Under this public disclosure doctrine, the requester bears the burden of establishing that there was an official, prior disclosure regarding the precise matter at issue, *see Wolf*, 473 F.3d at 378 (citation omitted) — *i.e.,* a prior disclosure that the requested records exist.  But as the Court explained in its previous opinion, this is an "exacting burden."  *Donato*, 308 F. Supp. 3d at 309–10.

Donato has not met this burden:  His new exhibits do not demonstrate that the FBI has acknowledged that it previously investigated Cicale's alleged scheme, and thus that the FBI would be likely to have records about that plot.  *See generally* Ex. F.  To overcome the FBI's *Glomar* response, Donato must point to "information in the public domain that appears to duplicate that being withheld."  *ACLU*, 710 F.3d at 427 (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983)).  Prior disclosure of similar information by other entities does not suffice; instead, the specific information withheld via the *Glomar* response must already be

public.  *Public Citizen v. Dep't of State*, 11 F.3d 198, 201, 203 (D.C. Cir. 1993).  In this case, that means that the unsealed documents from the BOP that describe the alleged Cicale plot and indicate an investigation into the scheme are not enough, for such documents do not establish that *the FBI* investigated the plot.[4]

Donato tries to get around this by arguing that under D.C. Circuit precedent, "official disclosure[s] by one component [of an agency] bind[] another component of the same agency." *See* Pl. Mot. at 6 (citing *Marino v. DEA*, 685 F.3d 1076, 1082 (D.C. Cir. 2012)).  But he misapprehends the relevant inquiry.  In the cases cited by Plaintiff, one component of DOJ made a specific reference to an investigation or inquiry by another component of the agency.  *See, e.g.*, *Marino*, 685 F.3d at 1082 (involving United States Attorney's disclosure of Drug Enforcement Agency investigation in criminal trial); *Bartko v. DOJ*, 62 F. Supp. 3d 134, 143 (D.D.C. 2014) (involving United States Attorney's public acknowledgment of an investigation referral to DOJ's Office of Professional Responsibility).  Here, however, Donato relies on documents which state only that the government investigated the alleged plot, not that the FBI investigated it.  *See Donato*, 308 F. Supp. 3d at 310; ECF No. 58 (Defendants' Response to Motion for Reconsideration) at 2.  Where a disclosure by another agency merely acknowledges a government investigation, there is no basis to conclude that the FBI conducted that investigation, notwithstanding Donato's argument that "the FBI . . . is the investigative arm of the DOJ."  *See* Pl. Mot. at 4.  Plaintiff offers no evidence to support his apparent assumption that the FBI

---

[4]    Donato relies primarily upon six memoranda from BOP officers describing conversations with inmates about a potential "hit" involving an MCC inmate and a BOP officer.  *See generally* Exhibit F.  Though these documents may indicate that the BOP investigated the alleged plot, they make no mention of the FBI or its role in the investigation.  The two additional documents that Donato submits — an unsigned affidavit and a handwritten letter — both describe the alleged Cicale plot in more detail, but again indicate only that the BOP was aware of the plot and may have investigated it.  *See id.*

8

conducts all government investigations mentioned by other components of DOJ. Thus, Donato fails to establish that the FBI or any other government agency has publicly acknowledged that the FBI investigated the alleged Cicale plot, and that any information withheld via the FBI's *Glomar* response therefore must already be public. *Bartko*, 62 F. Supp. 3d at 142.

## II.     Public Interest in Cicale Plot

Donato also argues that the Court gave insufficient weight to the public interest in learning of the Cicale plot, and what the plot might reveal about the operations or activities of the government. *See* Pl. Mot. at 9. The FBI, in issuing a *Glomar* response and refusing to confirm or deny the existence of responsive records, relies on FOIA Exemption 7(C), which requires a reviewing court to "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Davis v. DOJ*, 968 F.2d 1276, 1281 (D.C. Cir. 1992). Invocation of Exemption 7(C) is permissible where "the privacy interest at stake outweighs the public's interest in disclosure." *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995) (citation omitted).

Donato does not challenge the Court's conclusion that "all of the third parties mentioned in Donato's FOIA request have sufficient privacy interests at stake," given the stigma attached to association with law enforcement records. *Donato*, 308 F. Supp. 3d at 308. Rather, he takes issue with the Court's ruling that the public interest at stake is insufficient to overcome those privacy interests. *See* Pl. Mot. at 9–10. His arguments, however, are the same ones that he has made before. Donato has consistently argued that the public has an interest in understanding "how the FBI . . . carried out [its] duties to investigate and prosecute criminal conduct-murder conspiracy to frame a federal officer and informant[.]" *See* Pl. Opp. to MSJ at 16; *see also* Pl. Mot. at 9 ("[T]he requested information serves the public interest by contributing significantly to

9

the public's understanding of government operations."). But, as the Court previously noted, more is required to establish that the asserted public interest trumps third parties' privacy interests — "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged [g]overnment impropriety might have occurred." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004). Because Donato offers no such evidence, and because he simply reiterates his previous arguments, the Court is constrained to deny his Motion for Reconsideration. *See Wesberry*, 304 F. Supp. 3d at 41 ("[M]otions for reconsideration [under Rule 54(b)] cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled.").

## CONCLUSION

In sum, Donato seeks records about an investigation that the FBI has not publicly acknowledged, concerning private individuals whose privacy may be violated if the FBI confirms that it is in possession of records pertaining to such an investigation. *Donato*, 308 F. Supp. 3d at 310. Because Donato has not established the type of error that is cognizable under Rule 54(b), or that justice requires reconsideration of the Court's ruling, the Court will deny his Motion for Reconsideration. *Goldstein*, 2018 WL 3387689, at *2. A separate Order will issue this day.

Florence Y. Pan
United States District Judge

Date: November 5, 2021